## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS,
## SPRINGFIELD DIVISION

| | | |
|---|---|---|
| STULLER, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  10-CV-3303 |
| | ) | |
| STEAK N SHAKE ENTERPRISES, | ) | |
| INC. and STEAK N SHAKE | ) | |
| OPERATIONS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

This matter comes before the Court on Defendant Steak N Shake Enterprises, Inc.'s (SNS Enterprises) Motion to Dismiss Counts II and III of First Amended Complaint (d/e 21) and Defendant Steak N Shake Operations, Inc.'s (SNS Operations) Motion to Dismiss First Amended Complaint (d/e 23).  The Motions are fully briefed, and pursuant to Local Rule 72.1, the District Judge has referred the matter to this Court for Report and Recommendation.  After carefully considering all of the submissions of the parties, and pursuant to 28 U.S.C. § 636(b)(1)(B), this Court recommends that the SNS Enterprises' Motions should be ALLOWED and SNS Operations' Motion should be ALLOWED in part.

Counts II and III should be dismissed.  SNS Operations' request to be dismissed from the case should be denied.

<u>STATEMENT OF FACTS</u>

Plaintiff Stuller, Inc. (Stuller) is a franchisee of five Steak N Shake Restaurants.  Four are located in Springfield, Illinois.  One is located approximately thirty miles west of Springfield, in Jacksonville, Illinois. Stuller, or its predecessor, has operated Steak N Shake Restaurant franchises in central Illinois since 1939.  SNS Operations and SNS Enterprises (collectively SNS or the Defendants) are wholly owned subsidiaries of Biglari Holdings, Inc.  <u>First Amended Verified Complaint (d/e 10) (Complaint)</u>, ¶¶ 2-3.

Stuller currently is a franchisee under five franchise agreements (Agreement), one for each Steak N Shake Restaurant that it currently operates.  Stuller and SNS Operations executed three of the Agreements, one each on February 1, 1995, January 27, 2000, and January 26, 2005. <u>Complaint</u>, Exhibit 1, Parts 3-5.  Stuller and SNS Enterprises executed addenda to these three Agreements on July 18, 2006.  The addenda recite that SNS Enterprises is a successor in interest to SNS Operations with respect to the three franchises.  <u>Id.</u>  Stuller and SNS Enterprises executed the other two Agreements, and addenda thereto, on July 18, 2006. <u>Complaint</u>, Exhibit1, Parts 1-2.

The Agreements grant Stuller franchises to operate the five restaurants. The Agreements obligate Stuller to operate the five restaurants in accordance with the SNS system of operations:

> Franchisee acknowledges that maintaining uniformity in every component of the operation of the System is essential to the success of the entire chain of STEAK N SHAKE Restaurants, including a designated menu; uniformity of food and beverage specifications, preparation methods, quality and appearance; and uniformity of facilities and service. Franchisee agrees to comply with the entire System, as revised from time to time by the Company.

Complaint, Exhibit 1 Parts 1-5, Agreements, § 1.03. The Agreements obligate SNS, as franchisor, to provide Stuller with a copy of SNS's Operating Standards Manual, and authorize SNS to modify the Operating Standards Manual during the term of the franchise:

> The Franchisee will receive during the term of the Franchise one copy each of the Operating Standards Manual, and other applicable manuals and publications of the Company for STEAK N SHAKE Restaurants, containing mandatory and suggested specifications, standards and operating procedures prescribed from time to time by the Company for STEAK N SHAKE Restaurants and information relative to other obligations of Franchisee hereunder for the operation of a STEAK N SHAKE Restaurant. The Company shall have the right to modify the Operating Standards Manual and other manuals and publications from time to time to reflect changes in authorized products and services, standards of product quality and services for the operation of a STEAK N SHAKE Restaurant.

E.g., Complaint, Exhibit 1, Part 1, Agreement, § 5.01(a).[1]

The Agreements authorize SNS to terminate each franchise for good cause. Complaint, Exhibit 1, Parts 1-5, Agreements, § 11.01. The Agreements state that good cause to terminate exists if, inter alia, Stuller, "fails to maintain and operate the Restaurant in accordance with the standards and specifications established by the Company from time to time." E.g., Complaint, Exhibit 1, Part 1, Agreement, § 11.01(b)(vi).[2]

Before terminating the franchise, SNS must give written notice of the default. Stuller then has thirty days to cure the default. SNS can terminate the franchise only if the default is not cured within the thirty-day time period. Agreement, § 11.01(b).[3]

---

[1]This clause in the Franchise Agreements with SNS Operations begin with the phrase, "The Company will loan to Franchisee during the term of the Franchise" instead of the phrase, "The Franchisee will receive during the term of the Franchise." The remainder of the clause is identical in the five Agreements. Complaint, Exhibit 1, Parts 1-5, Agreements, § 5.01(a).

[2]The clause in the 1995 and 2000 Franchise Agreements states:

fails to maintain and operate the Restaurant in accordance with the standards and specifications established by the COMPANY form time to time as to service, cleanliness, health and sanitation; knowingly sells any product on the premises which does not conform to the COMPANY'S specifications; or fails to sell products designated by the COMPANY or sells products not approved by the COMPANY; . . . .

Complaint, Exhibit 1, Part 4, § 11.01(b)(10), and Part 5, § 11.01(b)(vi) (the word "Company" is not typed in all capital letters in the 2000 Agreement).

[3]The thirty-day notice and cure provision in the 1995 Agreement is in § 11.01(a). Complaint, Exhibit 1, Part 4, § 11.01(a).

The Agreements contain integration clauses. The integration clauses

state:

> The recitals to this Agreement are hereby incorporated into and made a part of this Agreement, which, together with Schedule 1 and any addendum hereto, constitute the entire agreement of the parties (and which supersedes all prior negations, commitments, representations and undertakings of the parties with respect to the subject matter hereof, all of which are deemed to have been merged into this Agreement). The Company has made no representations inducing the execution of this Agreement that are not incorporated herein.

Agreement, § 14.05 (emphasis in the original).[4] Schedule 1 of each

Agreement sets forth the address of the restaurant subject to the particular

Agreement and the exclusive territory granted to Stuller with respect to the

---

[4]The clause in the 1995 Agreement states:

> Entire Agreement. The preamble recitals are incorporated and made a part of this Agreement, which, together with the addendum hereto, if any, constitutes the entire agreement of the parties (and which supersedes all prior negotiations, commitments, representations and undertakings of the parties with respect to the subject matter hereof). The COMPANY has made no representations inducing the execution of this Agreement which are not incorporated herein.

Complaint, Exhibit 1, Part 4, Agreement, § 14.05.

The clause in the 2000 Agreement states:

> Entire Agreement. The recitals to this Agreement are hereby incorporated into and made a part of this Agreement, which, together with any addendum hereto, if any, constitutes the entire agreement of the parties (and which supersedes all prior negations, commitments, representations and undertakings of the parties with respect to the subject matter hereof, all of which are deemed to have been merged into this Agreement). The Company has made no representations inducing the execution of this Agreement which are not incorporated herein.

Complaint, Exhibit 1, Part 5, Agreement, § 14.05.

particular restaurant.  The addenda to the two Agreements executed on

July 18, 2006, modify § 14.05 as follows:

> 18.  The last sentence of Section 14.05 is deleted in its entirety, and in its place is added:

> Other than the Illinois Franchise Offering Circular (the "IFOC") that was previously provided to Franchisee, the Company has made no representations inducing the execution of this Agreement that are not incorporated herein.  Notwithstanding the previous sentence, the IFOC is incorporated into this Agreement only to the extent required by law.

Complaint, Exhibit 1, Parts 1 and 2, Addendum, § 18.

SNS also provided Stuller with certain disclosure documents in

connection with negotiating the current Franchise Agreements.  One of the

documents provided was called the Uniform Franchise Offering Circular

(UFOC).  Complaint, Exhibit 2, UFOC.  Item 19 of the UFOC is entitled

"Earnings Claims".  The section sets forth information about sales volume

and operations of Steak N Shake restaurants, both SNS-owned and

franchised.  Within this section, the UFOC states, in part:

> Furthermore, there are some differences between the operations of a franchised restaurant and a SNS-owned restaurant. . . .  Franchisees are free to set consumer prices different from prices on SNS-owned restaurant menus and several do so.

UFOC, at 37.

For the last seventy years, SNS franchisees, including Stuller, have

set their own prices for menu items and have maintained "custom menus"

that contained products specific to the locale.  Franchisees were also not required to participate in SNS marketing promotions.  Franchisees, including Stuller, set their own prices to account for differing labor, operational, and overhead costs in different parts of the country. Complaint, ¶ 11, Exhibit 5, Letter dated August 16, 2010.

On June 15, 2010, SNS Enterprises announced a new policy for menu pricing and promotions (Policy).  Complaint, Exhibit 3, Policy.  The Policy SNS-owned and franchised restaurants.  The Policy stated:

> All restaurants are required to follow set company menu and pricing as published with the exception of breakfast items. Additionally, all restaurants are required to offer all company promotions as published.
>
> Participation includes the following:
> ☐ Offer valid during all hours in all revenue centers
> ☐ Interior and exterior marketing materials posted in accordance with published criteria, except as prohibited by local regulation

Id.  The Policy contained the following rationale:

> Steak n Shake recognizes the value of "One Voice" of the brand
> ☐ Maximizes brand equity through enforcement of standards
> ☐ Promotional communication to guests is consistent among all locations
> ☐ Maintains a standardized look and feel of each unit
>
> Additionally, the Company has standardized the cost of goods across the brand, allowing us to meet our mission of providing the lowest possible prices to our guests.

Id.

On August 11, 2010, Brad Manns, SNS Enterprises Vice President

Development and Franchise Operations, sent a letter to Stuller.  <u>Complaint</u>,

Exhibit 4, <u>Letter dated August 11, 2010</u>.  The letter stated, in part:

> As you are aware, the Company recently issued a policy
> for Menu Pricing and Promotion ("Pricing/Promotion Policy")
> whereby all Steak n Shake restaurants (both company owned
> and franchised) must follow the Company's published menu
> pricing (except Breakfast) and offer all promotions as directed
> by the Company, . . . .
>
> In order to help you increase guest frequency and to help
> offset the impact of these changes, we are willing to implement
> certain marketing initiatives at our expense focusing on value
> pricing if you agree to follow our Pricing/Promotion Policy
> pursuant to the timetable outlined herein. . . . ("Marketing
> Investment") . . . .
>
> By signing below, you agree to follow the
> Pricing/Promotion Policy beginning September 1, 2010 and for
> the remainder of your Franchise Agreement Term, . . . .
>
> . . . .
>
> If you have any questions or concerns about the
> Pricing/Promotion Policy, please do not hesitate to contact me.
> **If you do not execute and return this Agreement to me on
> or before August 31, 2010, we will not commence the
> Marketing Investment on your behalf.**

<u>Id. (emphasis in the original).</u>  Below Manns' signature on the August 11,

2010, letter was a signature block for Stuller.  Stuller did not sign the letter

and did not implement the Policy.  Instead, Stuller and other franchisees

formed a group named One Voice Franchise Association (Franchise

Association).  The Franchise Association communicated with SNS

Enterprises regarding the Policy.  <u>Complaint</u>, Exhibits 5 and 6, <u>Letters dated August 16, 2010, and October 1, 2010</u>.

On October 27, 2010, SNS Enterprises sent Stuller a Notice of Default on two of the Agreements covering the restaurants located on Wabash Avenue and North Dirksen Parkway in Springfield, Illinois. <u>Complaint</u>, Exhibit 7, <u>Notice of Default (Notice of Default)</u>.  The Notice listed eighteen defaults.  Many were minor, ranging from missing marketing window-cling advertisements to a need to paint a sign pole.  The principal defaults listed involved charging prices above those allowed by the Policy. <u>Id.</u>

Counsel for Stuller responded to the Notice of Default by letter dated November 12, 2010.  <u>Complaint</u>, Exhibit 9, <u>Letter dated November 12, 2010</u>.  The letter stated that Stuller would cure the minor defaults.  The letter further stated that SNS Enterprises did not have authority under the Agreements to impose the Policy on Stuller, and Stuller did not agree to be subject to the Policy and did not sign the August 11, 2010, letter. Therefore, according to Stuller, it was not in default for electing not to follow the Policy.  <u>Id.</u>  SNS Enterprises responded by stating that it has the authority to impose the Policy on franchisee and will enforce its rights under its Franchise Agreements if franchisees fail to follow the Policy. <u>Complaint</u>, ¶¶ 23-24.

Stuller alleges that it will not be able to operate profitably if it must follow the Policy.  Stuller alleges that it will be forced out of business within a year if it must follow the Policy.  Complaint, ¶¶ 18-21.

## LEGAL STANDARD FOR MOTIONS TO DISMISS

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper where a complaint fails to state a claim on which relief can be granted. Fed. R. Civ. P. 12(b)(6).  The Federal Rules require only "a short and plain statement of the claim showing that the pleader is entitled to relief," and allegations must be "simple, concise, and direct."  Fed. R. Civ. P. 8(a)(2) & (d)(1).  While a complaint need not contain detailed, specific factual allegations, it must contain sufficient facts to "state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim is plausible if the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949 (2009).  A claim is plausible on its face if it provides the defendant fair notice of what the claim is and the grounds upon which it rests.  George v. Smith, 507 F.3d 605, 608 (7th Cir. 2007).  Dismissal under Rule 12(b)(6) is appropriate when "the factual detail in a complaint [is] so sketchy that the complaint does not provide the type of notice of the claim

to which the defendant is entitled under Rule 8." <u>Airborne Beepers &</u>

<u>Video, Inc. v. AT & T Mobility, LLC</u>, 499 F.3d 663, 667 (7th Cir. 2007).

<u>ANALYSIS</u>

Stuller alleges three counts against the Defendants. Count I seeks a declaratory judgment that Stuller is not required to comply with the Policy under the terms of the Agreements and applicable law, and also asks for injunctive relief to stop the Defendants from enforcing the Policy. Count II alleges a breach of the covenant of good faith and fair dealing in the Agreements because the Agreements did not authorize the Defendants to impose the Policy on Stuller, and SNS Enterprises acted wrongfully in attempting to declare a default for failure to follow the Policy. Count III alleges, in the alternative, that if the Defendants can impose the Policy on Stuller, then the Defendants violated the Illinois Franchise Disclosure Act (IFDA), 815 ILCS 705/1 et seq., by falsely stating in the UFOC that franchisees could set their own prices and that franchisees were not obligated to participate in all SNS marketing promotions.

The Defendants now move to dismiss. SNS Enterprises moves to dismiss Counts II and III; SNS Enterprises does not dispute that Count I states a claim. SNS Operations moves to dismiss Counts II and III on the same grounds as SNS Enterprises. SNS Operations, however, also moves to dismiss the entire case against it on the grounds that it is no longer a

party to the Agreements.  The Court will address SNS Operations' request to dismiss the entire case against it first, and then address Counts II and III.

I.    SNS OPERATIONS

SNS Operations argues that it is not liable because SNS Enterprises assumed its obligations under three of the Agreements that it originally signed as franchisor.  The argument is meritless.  Absent a novation, the original parties to a contract continue to be obligated to each other even after one of the them assigns its rights and obligations under the contract to a third party.  E.g., Pielet v. Pielet, __ N.E.2d.__, 2010 WL 4913471, *20 (Ill.App. 2nd Dist. 2010).[5]  In Illinois, a novation is an affirmative defense that SNS Operations must plead and prove.  U.S. Fidelity and Guar. Co. v. Klein Corp., 190 Ill.App.3d 250, 256, 558 N.E.2d 1047, 1051 (Ill.App. 1st Dist. 1989); Fed. R. Civ. P. 8(c).  Stuller is not obligated to anticipate affirmative defense in its pleadings.  See Doe v. GTE Corp., 347 F.3d 655, 657 (7th Cir. 2003).  Thus, based on the allegations in the Complaint, SNS Operations is still liable to Stuller on three of the Agreements as the original party to those contracts.  SNS Operations' request to dismiss all claims

---

[5]The parties agree that Illinois law governs the Agreements.  See e.g., Plaintiff Stuller, Inc.'s Reply in Further Support of Motion for Preliminary Injunction (d/e 30), at 5; Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Preliminary Injunction (d/e 27), at 16.

because it assigned three of the Agreements to SNS Enterprises is denied.[6]

II.   <u>COUNT II</u>

SNS moves to dismiss Count II on several grounds.  SNS correctly notes that in Illinois there is no independent claim for breach of the implied covenant of good faith and fair dealing arising from a contractual relationship.  <u>See</u> <u>Brooklyn Bagel Boys, Inc. v. Earthgrains Refrigerated Dough Products, Inc.</u>, 212 F.3d 373, 381 (7th Cir. 2000).  Rather, Stuller must state a claim for breach of the contract.  The misnomer in Count II, however, does not resolve the matter.  Stuller still states a claim if the allegations plausibly show that it can establish a claim for breach of contract.  <u>See</u> <u>AutoNation, Inc. v. GAINSystems, Inc.</u>, 2009 WL 1941279, at *5 (S.D.Fla. 2009) (applying Illinois law).

To state a claim for breach of contract, Stuller must allege that the parties entered into an enforceable contract, Stuller performed its obligations under the contract, SNS breached the contract, and Stuller was injured thereby.  <u>Peterson v. H&R Block Tax Services, Inc.</u>, 971 F.Supp. 1204, 1209 (N.D.Ill. 1997).  If the alleged breach concerns a contract

---

[6]As explained below, this Court recommends dismissing Counts II and III.  Upon their dismissal, only the Count I claim for declaratory and injunctive relief will remain.  SNS Operations should remain as a defendant in Count I because its continuing liability to Stuller under the three Agreements may be affected by any declaratory relief that may be given.

provision that gives a defendant some discretion in performing the contract, the plaintiff must allege that the defendant exercised that discretion in bad faith. Id., at 1211; Oil Exp. Nat., Inc. v. Burgstone, 958 F.Supp. 366, 369-70 (N.D.Ill. 1997).

In this case, Stuller fails to plead any damages in Count II. Damages are a required element for a breach of contract claim. Penn-Daniels, LLC v. Daniels, 2009 WL 1475277, at *3 (C.D.Ill., 2009). Stuller pleads only one sentence regarding damages directly, "As the result of Defendants' actions, Plaintiff has been and will be damaged." Complaint, ¶ 49. This conclusory statement is insufficient by itself. See Iqbal, 129 S.Ct. at 1950. Other allegations only allege future harm if Stuller is forced to follow the Policy in the future. E.g., Complaint, ¶¶ 18, 20, 25, 30, 41, 43. Claims of future harm are insufficient to state a claim for breach of contract in Illinois. Daniels, 2009 WL 1475277, at *3. Stuller, therefore, fails to state a claim.

Stuller argues it has alleged damage because the Agreements allow Stuller to recover attorney fees from SNS for the cost of bringing this action. Stuller is entitled to recover attorney fees incurred to enforce its rights under the Agreements. Complaint, Exhibit 1, Parts 1-3,5, Agreements, § 14.3, and Part 4, Agreement, § 14.12. A claim for the attorney fees incurred to bring Count II is not sufficient to support the claim in Count II. If the only damages are attorney fees for the breach of contract

action, then Stuller could avoid the damages by not bringing the action for breach of contract. This Court will not encourage parties to bring lawsuits when there is no damage absent the bringing of the suit.

Stuller argues that it is incurring attorney fees to bring the action in Count I for declaratory and injunctive relief. Stuller argues that those fees should be recoverable as contract damages. The Court disagrees. The fees incurred for bringing Count I arise from the same dispute between the same parties. In such situations in Illinois, the fees incurred in connection with one claim are not recoverable as damages in a separate claim. See Tolve v. Ogden Chrysler Plymouth, Inc., 324 Ill.App.3d 485, 491-92, 755 N.E.2d 536, 541 (Ill.App. 2$^d$ Dist. 2001). If Stuller prevails on Count I, Stuller may ask for attorney fees, and the Court will consider whether Stuller is entitled to an award of attorney fees under the terms of the Agreements. A separate claim for breach of contract, however, is not necessary or appropriate to recover those fees. The Court, therefore, recommends that Count II be dismissed.

III. <u>COUNT III</u>

Count III alleges a claim in the alternative for making false statements in the UFOC in violation of the IFDA. The IFDA statute of limitation

provision provides:

> Periods of limitation. No action shall be maintained under Section 26 of this Act to enforce any liability created by this Act unless brought before the expiration of 3 years after the act or transaction constituting the violation upon which it is based, the expiration of one year after the franchisee becomes aware of facts or circumstances reasonably indicating that he may have a claim for relief in respect to conduct governed by this Act, or 90 days after delivery to the franchisee of a written notice disclosing the violation, whichever shall first expire. . . .

815 ILCS 705/27. Any false statement SNS made in the UFOC to induce Stuller to enter into the Agreements occurred no later than the date that Stuller signed the Agreements. See Dudley Enterprises, Inc. v. Palmer Corp., 822 F.Supp. 496, 504 (N.D.Ill. 1993). Stuller signed the Agreements, and any addenda, on or before July 18, 2006. Stuller filed this action more than three years later on November 18, 2010. The claim is, thus, barred by the statute of limitations.

Stuller argues that the Court should apply the one-year provision or the ninety-day provision in § 705/27, quoted above. The Court disagrees. The statute gives three options: (1) three years from the violation; (2) one year from when the franchisee could reasonably discover that it has a claim; or (3) ninety days after the franchisee receives written notice of the violation. The section then states that the applicable option is "whichever shall first expire." 815 ILCS 705/27. In this case the three-year term expired first so it is the applicable alternative. The statute has run.

Stuller also argues that equitable tolling should apply.  Equitable tolling may apply when the plaintiff has been prevented from asserting his or her rights in some extraordinary way.  <u>Clay v. Kuhl</u>, 189 Ill.2d 603, 614, 727 N.E.2d 217, 223 (Ill. 2000); <u>see</u> <u>Cada v. Baxter Healthcare Corp.</u>, 920 F.2d 446, 451 (7th Cir. 1990).  In this case, Stuller argues that it could not have sued earlier because it did not know the representations were false until SNS Enterprises declared the default on October 27, 2010.  Only then did Stuller know that SNS falsely omitted from the UFOC the material fact that Agreements entitled SNS to set maximum prices for franchisees.  <u>See</u> <u>Stuller, Inc.'s Memorandum of Law in Opposition to Defendant Steak N Shake Enterprises, Inc.'s Motion to Dismiss First Amended Complaint (d/e 28)</u>, at 13-14.

The Court does not believe that equitable tolling should apply under the facts alleged.  The Illinois legislature contemplated a circumstance, such as the one alleged by Stuller, in which the franchisee does not become aware of the facts or circumstances reasonably indicating that it may have a claim for relief until sometime after the signing of the franchise agreement.  815 ILCS 705/27.  The legislature provided that in such a circumstance the franchisee could bring an action within one year from the discovery of those facts and circumstances unless one of the other two statutory time limits had already expired.  <u>Id.</u>  The "whichever shall first

expire" language demonstrates that the legislature wanted the shortest of the three time limits to apply even in Stuller's alleged situation. The equitable tolling doctrine would frustrate the legislative scheme by allowing claims to survive beyond that three-year limit. See Short v. Belleville Shoe Mfg. Co., 908 F.2d 1385, 1391 (7th Cir. 1990) (no equitable tolling available for three-year outer limit in Securities Act of 1933 § 13 statute of limitations).

In addition, Stuller fails to plead any damages in Count III. Stuller must allege actual damages to recover under the IFDA. 815 ILCS 705/26; Dunkin' Donuts Inc. v. N.A.S.T., Inc., 428 F.Supp.2d 761, 767 (N.D.Ill. 2005). As in Count II, Stuller does not allege that it has yet suffered any damages; Stuller only alleges the harm that will occur if it must comply with the Policy. Stuller, therefore, fails to state a claim. Stuller again argues that it has alleged that is has incurred attorney fees to bring this action. As explained above, a claim for fees incurred to bring Count I against SNS is not sufficient to allow Stuller to bring a separate claim against SNS for those fees. Tolve, 755 N.E.2d at 541; see also Dunkin' Donuts Inc., 428 F.Supp.2d at 769 n.11 (attorney fees are not damages for purposes of the IFDA).

Stuller asks for leave to replead Count III to show facts that would allow equitable tolling in this case. The Court does not recommend giving

leave to replead based upon the reasons stated above. Thus, Count III should be dismissed without leave to replead.

WHEREFORE, this Court recommends that Defendant Steak N Shake Enterprises, Inc.'s Motion to Dismiss Counts II and III of First Amended Complaint (d/e 21) should be allowed, and Defendant Steak N Shake Operations, Inc.'s Motion to Dismiss First Amended Complaint (d/e 23) should be ALLOWED in part. The Court recommends that Counts II and III be dismissed. SNS Operations' Motion (d/e 23) should otherwise be denied.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk of the Court within fourteen days after service of an ECF copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file a timely objection will constitute a waiver of objections on appeal. See Video Views, Inc. v. Studio 21, Ltd., 797 F.2d 538, 539 (7th Cir. 1986). See Local Rule 72.2.


ENTER: February 18, 2011

_____s/ Byron G. Cudmore_____
BYRON G. CUDMORE
UNITED STATES MAGISTRATE JUDGE
